ALEXANDER EDMUNDS, Plaintiff in Error, *v.* McCARTY HILDRETH *et al.*, Defendants in Error.

### ERROR TO LOGAN.

Parties defrauded, and those injured by the fraud, can alone take advantage of it, to annul a contract.
Parties to a fraud cannot avoid the act for the fraud. The defrauded party may do so, or his creditors, and others injured by it.
If the party injured acquiesces in, or confirms a contract tainted with fraud, others not interested or acting in it, cannot avoid it for him.

THE decree in this case was rendered by DAVIS, Judge, at September term, 1854, of the Logan Circuit Court.

This case is in all respects like the preceding, except that Edmunds sold to Hildreth and one William Turner, the said patent for several States, for ten thousand dollars, and that Turner sold his interest to the two Myers for five thousand dollars. They were not parties to the agreement between Edmunds and Hildreth and Turner.

WILLIAMS and LAWRENCE, for Plaintiff in Error.

A. LINCOLN, for Defendants in Error.

SCATES, J. The frame and objects of this bill are similar to the case of *Edmunds* v. *J. and G. Myers*, (*ante,* p. 207,) under the same patent, and which alleges a fraud in the sale, and prays a rescission of the contract, and a re-conveyance of two tracts of land to defendants, which had been conveyed by Hildreth and Turner for the patent. The only material difference in the two cases is, that in this case the bill charges that the sale was made to, and the consideration paid by, Hildreth and W. Turner, and a sale and transfer of his interest, by Turner, to J. and G. Myers. The answer denies all fraud, and denies a sale to Hildreth and Turner. But it admits a sale to Turner, and states that a deed of assignment of the patent was made to

Turner in the summer of 1853, and that Turner paid therefor, by a conveyance of the two tracts of land, made in the summer also. That afterwards, Turner sold one-half his interest to Hildreth, and at the request of both, and for their accommodation, without any new sale or consideration, Turner surrendered the former deed of assignment, and Edmunds executed, to both Hildreth and Turner, another, dated 12th December, 1853.

The patent, specifications, drawings, and deed of assignment to Hildreth and Turner, and Turner's assignment of his interest to Myers, together with the depositions in the case of *Edmunds* v. *J. and G. Myers,* were all the evidence in this case.

We are unable to find any ground to sustain this decree, which rescinded the contract, directed a re-conveyance, by Edmunds, of the two tracts to Hildreth, and J. and G. Myers of undivided moieties, and that they re-convey or assign the patent.

I have already, in the other case, given my views of the supposed equities, upon the supposition that the fraud was established, and they apply equally to this case.

But this case is distinguishable from that, in this : here the defendants, who are strangers to the contract, being neither parties, nor privies in estate or interest, are seeking to rescind that contract for fraud between the parties to it, and further, to recover for their own benefit, the consideration paid for the patent.

Suppose there was fraud, the party defrauded and those injured by the fraud, could alone take advantage of it to annul the contract. The parties to the fraud, cannot avoid the act for the fraud ; the party defrauded may, at his election, and so may those, not parties, but who are injured by the fraud, as creditors and such like interests. So it was held in *Steele* v. *Worthington,* 2 Ohio R. 182, that a residuary legatee cannot take advantage of a fraud committed upon the United States by his devisor and the defendant, in the purchase of the land ; and for two reasons, the legatee is a third person, a stranger to the contract, and the devisor was a *particeps criminis,* so neither he, nor any one claiming under him, can avoid it for his own fraud.

So, again, in *Carrol et al.* v. *Potter et al.,* Walk. Ch. R. 355, it was held that an assignee of a contract cannot avoid it for fraud in making it. As between the *particeps criminis* courts will neither enforce or annul contracts that are void, as against public policy. *Doolin* v. *Ward,* 6 John. R. 194.

In *Love* v. *Belk,* 1 Ired. Ch. R. 163, it is said that the grantor alone, or those succeeding to his rights, can set up the fact of the agreement being obtained by undue means, for the

purpose of preventing a recovery by the grantee.    1 U. S. Dig. p. 557, Sec. 458.

And the subsequent purchaser even will not be allowed to make this suggestion of fraud in his grantor, unless the party actually defrauded thereby, has taken measures to have the transaction set aside, by a court of equity, if such subsequent purchaser had actual notice of such agreement.    *Maynor* v. *Lewis*, 2 Ga., Sec. 205; 1 U. S. Dig., p. 557, Sec. 460.

The law abhors fraud, and declares contracts tainted with it void, but this must be understood of it, in its effect and operation when applied; for there are many instances in the books, of both constructive and actual frauds capable of confirmation by the courts and parties injured, and at their election.    This is both reasonable and according to the maxim *volenti not fit injuria*, as to the right of rescission.    If the party injured acquiesce in or confirm the contract with a full knowledge of the fraud, no one, surely, can have a right to annul his contract for him.    If he have a knowledge of the fraud, he will be presumed to acquiesce, if he take no step, but sleep upon his rights. Walk. Ch. R. 186, 373; 3 Pet. R. 214.

The frame of this bill is defective, for the want of an offer to return the patent; by the bill, as it stands, they ask to have the consideration received from Turner, returned to them, and still hold fast what they purchased of Turner.    Again, they do not make Turner a party complainant or defendant, and yet, not only seek to annul his contract with Edmunds, with which he is satisfied, but ask for their sole benefit, the consideration he paid for it; and all this, without a suggestion even of any fraud in their own contract with Turner, or even a mistake, that they did not acquire from Turner, by and under the patent all that they purchased, or expected by the purchase.    Admitting that Hildreth was an original contractor with Turner, still joining with him, will not dispense with Turner as a party.

The radical error in the case, is, as I think, in the supposed substitution of the Myers to the contract and rights of Turner, the assignability of the contract, with all its incidents, fraud and all.    That the contract between Turner and Edmunds, with all Turner's rights and powers under it, and Edmunds' liabilities to Turner, by Turner's sale of the patent, passed with the patent, as attendant heir-looms, or as covenants running with the land, or like the promises and undertakings of a bill of exchange or promissory note, by an assignment or a mortgage, as an incident to the mortgage debt.    Such is not the general characteristic of contracts in relation to the property about which they are made.    They do not attend and pass with the property, though the right and title of the contracting party

may. The difference would be, if the contracts themselves passed, they would carry with them the mutual right to a remedy under them, and so effect a complete substitution of new parties to the contracts themselves. This is not literally and universally true of bills of exchange and promissory notes which are assignable. No one would contend that C, by the purchase of a horse from B, could sue A upon a warranty given by him to B, on a sale of the horse to B, and yet he could as well do so, as to sue A for any fraud committed on B in the same sale.

If the Myers, at the time of the sale from Edmunds to Turner, or Hildreth and Turner, had any rights or interests injuriously affected by any fraud in that sale, they may sue and have relief. If they were not affected by it, they have no ground of complaint in law or equity, and so, if they obtained all they bought of Turner. If they did not, he, and not Edmunds, is liable to them. Their own contract with Turner, and not Turner's with Edmunds, is the one to assail and set aside. Turner and Edmunds seem content with their bargain, and no one, unless he is injured, can have any cause to complain of it, and if injured, he must show how. The novelty of this ground of equity is only exceeded by the justice of keeping Edmunds' patent, and the modesty of asking him to add to it the value of what he received for it. This, the court attempted to remedy in the decree, by directing a re-assignment, but without any proof that it has not been sold by them.

But as we can perceive no equity in the bill, the decree will be reversed, and the bill dismissed.

*Decree reversed.*